UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MIRIAM G.,[1]

      **Plaintiff,**

  v.

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

Case No. 2:23-cv-21065
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Miriam G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.  **PROCEDURAL HISTORY**

  Plaintiff filed her current applications[3] for disability insurance benefits and supplemental security income on March 6, 2020, alleging that she has been disabled since September 1, 2002.[4] R. 127–28, 139, 145, 302–13. The applications were denied initially and upon reconsideration. R. 151–68. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 169–70. ALJ Sheena Barr held a hearing on April 20, 2021, at which Plaintiff appeared without a representative. R. 94–107. The ALJ held a second hearing on May 20, 2021, at which Plaintiff again appeared without assistance. R. 83–93. The ALJ held a third hearing on March 10, 2022, at which Plaintiff testified without the assistance of counsel. R. 58–82. In a decision dated August 31, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 1, 2002, Plaintiff's alleged disability onset date, through the date of that decision. R. 40–50. That decision became final when the Appeals Council declined review on August 25, 2023. R. 10–16. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 22, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

---

[3] In a decision dated October 17, 2002, Plaintiff was found disabled as of April 1, 2001, based on the medically determinable impairments of generalized anxiety disorder, panic disorder, and recurrent depressive disorder; benefits were terminated, based on medical improvement. R. 112, 114.

[4] "Also note that the claimant was previously granted a period of benefits from April 1, 2011, through March 31, 2017, with the period of disability ending as per the ALJ decision of October 29, 2018. This extended the claimant's insured status as follows: her Date First Insured is now April 1, 2017, and her Date Last Insured is March 31, 202[2]. Accordingly, the earliest potential onset date for the current Title II claim is April 1, 2017, despite the September 1, 2002, alleged onset date." R. 40.

Procedure. ECF No. 5.[5] On February 26, 2024, the case was reassigned to the undersigned. ECF No. 6. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different

---

[5]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

5

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 42 years old on her alleged disability onset date, and was 62 years old on her date last insured. R. 129. She met the insured status requirements of the Social Security Act through March 31, 2022. R. 43. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 1, 2002, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff's asthmatic bronchitis, hypertension, cholelithiasis, and depression were medically determinable, but that her alleged right leg problems, difficulty walking, inability "to use right hand", mouth lesions, hepatic cyst, thyroid lobe nodule, and bullet fragments in her chest were not medically determinable. R. 43–44. None were severe impairments. R. 44–49. The ALJ therefore concluded that Plaintiff was not disabled

within the meaning of the Social Security Act from September 1, 2002, her alleged disability onset date, through the date of the decision. R. 49–50.

Plaintiff disagrees with the ALJ's findings at step two and argues that the ALJ failed to obtain a knowing and intelligent waiver of representation. She asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 15. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 17.

## IV.   DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ failed to obtain a knowing and intelligent waiver of representation. *Plaintiff's Moving Brief,* ECF No. 15. For the reasons that follow, this Court agrees.

Although claimants have no constitutional right to counsel at social security disability hearings, *Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190 (3d Cir. 2003); *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008), they do have a statutory and regulatory right to counsel at such hearings. *Id*.; 42 U.S.C. § 406; 20 C.F.R. §§ 404.1705, 416.1505. Accordingly, a "claimant must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver." *Vivaritas*, 264 F. App'x at 157. "'Unlike other circuits, the Third Circuit has not clearly defined a standard for what an ALJ must do to obtain a 'knowing and intelligent' waiver of a pro se claimant's right to counsel.'" *Neifert v. Saul*, No. 1:20-CV-453, 2020 WL 6585897, at *4 (M.D. Pa. Nov. 10, 2020) (quoting *Velez v. Comm'r of Soc. Sec.*, No. CV 17-02914, 2018 WL 6787538, at *2 (D.N.J. Dec. 26, 2018)); *see also Vivaritas*, 264 F. App'x at 158 n.1 (referring to the finding of the Court of Appeals for the Seventh Circuit that "[t]o ensure valid

waivers, ALJs must explain to pro se claimants (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees" and noting that, although the Third Circuit has referred to decisions by other courts of appeals, "we have not required that ALJs explain each of these listed items that the Court of Appeals for the Seventh Circuit case law requires") (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)) (cleaned up)); *McGrew v. Colvin*, No. 13CV0144, 2013 WL 2948448, at *5–7 (W.D. Pa. June 14, 2013) ("The United States Court of Appeals for the Third Circuit has declined to adopt a rigid protocol for an ALJ to follow when obtaining a waiver of representation.") (citing *Vivaritas*, 264 F. App'x at 158 n.1).

Significantly, a defect in the waiver process "in and of itself is not a sufficient justification for remand." *Phifer*, 84 F. App'x at 190. Instead, "remand is proper where the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness." *Id*. at 190–91; *see also Vivaritas*, 264 F. App'x at 158 ("'[I]f the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record. . . . While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant.'") (quoting *Skinner v. Astrue*, 478 F.3d at 842); *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir.1980) ("[I]f it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal.").

Plaintiff, who is now represented by counsel, observes that the record makes clear that she had previously been granted benefits due to mental impairments and that she continued to attend "adult daycare." R. 45, 77. She insists that she was "utterly oblivious to the issues" in her case and "utterly incapable of understanding the nature of the proceedings, her burden of proof or even able to maintain a sensible conversation or be responsive to many of the ALJ's

9

questions." Under these circumstances, Plaintiff argues, she was incapable of a knowing and intelligent waiver of her right to representation. *Plaintiff's Moving Brief*, ECF No. 15, pp. 25–35. Moreover, Plaintiff contends that the lack of counsel prejudiced her. *Id*.

For his part, the Commissioner argues that Plaintiff was sufficiently informed of her right to representation, on multiple occasions through written notices and verbal explanations by the ALJ, and that this information—along with continuances that gave Plaintiff time to find counsel—was sufficient to establish a knowing and intelligent waiver. *Defendant's Brief*, ECF No. 17, pp. 8–12. The Commissioner further argues that the ALJ fully discharged her heightened duty in developing the record and that Plaintiff was not prejudiced by the lack of representation. *Id*. at 12–14. The Commissioner's arguments are not well taken.

It is true that Plaintiff was sent written notice of her right to representation. R. 171–84 (dated October 28, 2020), 185–96 (dated November 17, 2020), 201–12 (dated February 24, 2021), 215–26 (dated April 26, 2021), 230–41 (dated May 26, 2021), 248–59 (dated September 9, 2021), 264–85 (dated December 23, 2021), 286–98 (dated December 28, 2021). However, the Court is not persuaded that the hearing transcripts establish that Plaintiff—who, it must be remembered, had previously been granted benefits based on mental impairments and who continued to attend adult daycare— knowingly and intelligently waived her right to counsel. Plaintiff's relatively incoherent responses to the ALJ's advice offers insight into Plaintiff's faulty understanding of the process that she faced.

For example, during the first hearing, on April 20, 2021, after the ALJ had advised Plaintiff of her right to representation, Plaintiff asked the ALJ to provide "the name of any attorney that takes Social Security". R. 99–01. The ALJ responded that "we can send you a list of agencies and those agencies are really like Legal Aid, Legal Services type place." R. 101

(advising further that, although the ALJ could not recommend specific attorneys, Plaintiff could "Google" New Jersey disability attorneys and that the hearing would be rescheduled "within the next 30 days or something like that"). Plaintiff responded, "Because I've called and called, but I can't get there because I got badly hurt in my eye, my stomach. I fell, and, you know." R. 102. Plaintiff then requested "the listing of the legal services for an attorney[.]" R. 105; *see also* R. 105–06 (advising that Plaintiff could not remember her email address but would fax that address to the ALJ). It is not apparent from the record that either the ALJ or the SSA actually sent a list of possible resources to Plaintiff after that hearing.[6]

At the second hearing, held on May 20, 2021, Plaintiff again appeared without a representative:

> ALJ: All right. So, Ms. G[.], I think this is the second time we've met. The first time you had said that you wanted to continue the case in order to look for a representative, but –
>
> CLMT: Yeah, I didn't find an attorney. I haven't been able to find an attorney. So, I'm just going to take my chances. I'm 61 years old and you know, I have my pocketbook, all my paperwork, and I was coming back home -- Hoboken University Hospital and I stopped for one minute at the bus stop, and I wrote you a small little paragraph. I stopped right by eighth area in Bourgoyne (PHONETIC) Avenue. Like something like a little monkey or something that's there -- he ripped my pocketbook. She -- you know, it had to be him because that's what the policeman's telling me. But it's all right. But I need that also for another claim that I'm speaking to someone else -- from the injuries sustained, you know. But that area was a dangerous area.
>
> ALJ: Yeah, I'm sorry. I just want to clarify what you said. So, you said you had paperwork but it was in your pocketbook, and something happened to your pocketbook?
>
> CLMT: Yeah. My pocketbook -- yeah, the other one I had to leave it behind because I couldn't take it with me. The other one I haven't been able to pick it up, and I'm not even sure like where it is. The area that I was walking -- I told you. I

---

[6] However, a list of available legal resources had been previously sent to Plaintiff in October 2020. R. 177–79.

> wrote it on a piece of paper. It's Bourgoyne Casters (PHONETIC) area where they have a small park or something. Yeah, my pocketbook is all ripped up.
>
> ALJ: Okay, I'm --
>
> CLMT: So, he wants pictures of that. I took it to the police station.
>
> ALJ: Okay I –
>
> CLMT: I haven't been able to pick up the police report. I haven't been able to pick up anything. I haven't been able to go to the doctor over there because the senior citizens (inaudible) they're you know -- to call the senior citizens you have to call like a week and a half prior appointment, and I've been trying to get an appointment with Dr. Lamine (PHONETIC), but you know, I usually walk in and nothing happens. But I wanted to go to another doctor, and I had a foot doctor and I haven't been able to get an appointment with him either. You know, like they're book out for a month. So, that's my only setback.
>
> ALJ: Okay. So, are you basically saying you need more time before we go forward today because you don't have your medical documentation?
>
> CLMT: Yeah. Well, I haven't been able to go and get my foot done so he can give me like -- my nail is clearly deformed two of them. And, it looks really bad. My -- you know, my big toe and my foot is deformed, and another reason that's not -- you know, yeah.

R. 86–88; *see also* R. 88–89 (reflecting that the ALJ advised that she "can't keep the case open indefinitely for however long it takes you to go to the doctors. But if you're asking for more time because you're about to go to the doctors and get more medical then I can push it back one more time for you"). The ALJ also advised that consultative examinations could be arranged, at no cost to Plaintiff, that transportation to the appointments would be provided, and that Plaintiff would receive notices in the mail providing the details of those examinations. R. 89–92.

At the third and final hearing, held on March 10, 2022, Plaintiff again appeared without a representative:

> ALJ: Yeah. So I just, we had already talked about getting an attorney. That was a while ago. *And you already waived that right.*
>
> CLMT: Nobody wants --

12

> ALJ: You had time to look for an attorney and --
>
> CLMT: Nobody wants -- yeah.
>
> ALJ: Right.
>
> CLMT: Nobody wants to handle a Social Security attorney. None that are, that would speak to of taking the case.
>
> ALJ: Right. Right. Yeah. And --
>
> CLMT: Yeah.
>
> ALJ: I can't force an attorney to take the case. *But it's fine because, you know, I'll* --
>
> CLMT: Yeah.
>
> ALJ: -- *just ask you the questions myself. Basically, the* --
>
> CLMT: Okay.
>
> ALJ: -- *same things that they would be doing*. And so then, I'll make a decision, like I said. And then you'll get it in the mail. And depending on what that decision is, it will leave you further instructions on what to do.
>
> CLMT: Okay.

R. 68–69 (emphasis added). Apparently, Plaintiff had also failed to attend scheduled consultative examinations:

> CLMT: …. Someone stole my pocketbook. They stole my bag with my orthopedic shoes in it. I had, like, a little small suitcase. And all I have is a police report.
>
> ALJ: Okay.
>
> CLMT: Yeah.
>
> ALJ: All right. So do you --
>
> CLMT: And she returned --
>
> ALJ: I'm sorry, go ahead.

13

CLMT: She returned all my mail from 1300 Counterway Avenue.

ALJ: Uh-huh.

CLMT: Because due to the bad weather, we couldn't return there. They wouldn't approve for us to live there anymore, so we were relocated up here.

ALJ: Okay.

CLMT: Yeah.

ALJ: All right. But so now this is your address, so I updated --

CLMT: This is my new address, yeah.

ALJ: -- the address.

CLMT: Yes.

ALJ: Okay. And the phone number we had already updated.

CLMT: Okay.

ALJ: So that was fine.

CLMT: Yeah.

ALJ: Okay. All right.

CLMT: I tried to call as many people as I could.

ALJ: Okay.

CLMT: Yeah.

ALJ: No, that was good. All right.

CLMT: Yeah. And I couldn't go to 3000 Kennedy Boulevard, and I couldn't get to the other doctor they sent me because my cousin has my dentures, she has my glasses and everything. She was holding them for me because we had to move so fast. So she was holding it and she just brought it to me, okay? So if you want, we can reschedule everything. I have my glasses, my dentures. You know, that's about -- all my medications so I can take with me.

ALJ: Okay. I mean, they usually let you reschedule once, so if they cancelled --

>CLMT: Yeah.
>
>ALJ: -- them because you didn't go at all, then that means that they have given you --
>
>CLMT: Yeah.
>
>ALJ: -- the opportunity to reschedule it and, for whatever reason --
>
>CLMT: Yeah.
>
>ALJ: -- that didn't happen, so.
>
>CLMT: Yeah.
>
>ALJ: So I don't really want to go and schedule them again because, you know--
>
>CLMT: Okay.
>
>ALJ: Yeah.
>
>CLMT: All right. So what do you want me to do?
>
>ALJ: Well, I mean, nothing. We'll just do your hearing and then that would pretty much be it.
>
>CLMT: Okay.

R. 61–63.

Although Plaintiff was provided written notices of her right to representation, and the ALJ also advised Plaintiff of her right to counsel, the hearing transcripts do not establish that Plaintiff knowingly and intelligently waived that right. At the first hearing, Plaintiff clearly expressed her desire for counsel, asking twice for a list of available legal services. R. 101, 105. At the second hearing, despite the ALJ's later finding that Plaintiff had waived her right to representation at that hearing, R. 68, the transcript from that hearing reflects a rambling, distracted claimant who demonstrated no ability to understand the relevant issues. R. 86–88. Plaintiff's ramblings continued at the third hearing, when she focused on her stolen pocketbook

15

and talked about rescheduling consultative examinations. After the ALJ advised that Plaintiff had already waived her right to representation, Plaintiff expressed her frustration at her inability to find counsel to represent her. R. 68. It was only when the ALJ had advised Plaintiff that it was "fine" to proceed without counsel because she—the ALJ—would "[b]asically" function like counsel, that Plaintiff proceeded with the hearing. R. 69.

In short, the hearing transcripts reveal a confused and distracted Plaintiff who did not appear to understand the significant right that she gave up at a hearing at which the ALJ "just ask[ed] the questions[.]" R. 69. The record is replete with the distracted, rambling, and non-responsive statements by a Plaintiff who persistently expressed her desire for representation and who appeared incapable of understanding the relevant issues. Under these circumstances, the Court cannot conclude that Plaintiff made a knowing and intelligent decision to give up her right to representation. *Cf. Oshman v. Kijakazi*, No. 1:22-CV-1047, 2023 WL 3232610, at *5 (M.D. Pa. May 3, 2023) ("While the ALJ engaged in a conscientious colloquy with Oshman, in our view the results of that colloquy demonstrated that Oshman's mental impairments did not allow her to make a knowing and intelligent decision to forego her right to counsel. Quite the contrary, that colloquy underscores how Oshman's decision to waive counsel was not made in a knowing and intelligent fashion. . . . Simply put, at this hearing Oshman presented as a claimant who did not understand the role of counsel; who was unaware of the basic nature of the administrative hearing; who was unable to recall her mental status or medical history; and who was largely ignorant regarding the medical evidence under consideration by the ALJ. Given this constellation of considerations, all of which weigh against a valid waiver of counsel, we conclude that Oshman's waiver of her right to the assistance of counsel was not a knowing and intelligent waiver as required by law."); *Neifert*, 2020 WL 6585897, at *5.

Moreover, the Court concludes that Plaintiff suffered prejudice when she proceeded without the assistance of counsel. *See Vivaritas*, 264 F. App'x at 161. For example, at the March 10, 2022, administrative hearing, the ALJ advised Plaintiff, whose insured status for Disability Insurance Benefits would lapse three weeks later, on March 31, 2022, that Plaintiff could appeal or reapply for benefits in the event of an adverse decision:

> ALJ:  …. I mean, you know, what I'll do is I'll take your testimony today.  You know, you will get a decision in the mail in a couple of weeks.  Based on that decision, you can either appeal my decision or you can file a whole new application.

R. 65–66; *see also* R. 69 ("ALJ: You can always reapply if you're denied. You can always appeal if you're denied."). In fact, the ALJ's decision was actually issued on August 31, 2022, R. 40-50, months after the lapse of Plaintiff's insured status for Disability Insurance Benefits. *See Plaintiff's Moving Brief*, ECF No. 32; R. 40–50, 302–03; *see also Shoemaker v. Colvin*, No. 3:16-CV-2304, 2018 WL 3245011, at *1 (M.D. Pa. Apr. 5, 2018) ("In cases where a disability claimant has had a prior application denied, additional temporal limits may apply to the consideration of subsequent applications. As a general rule, that prior ruling acts as *res judicata* on any aspects of a disability claims relating to matters which transpired prior to that ruling.") (citations omitted), *report and recommendation adopted sub nom. Shoemaker v. Berryhill*, No. 3:16-CV-2304, 2018 WL 3239903 (M.D. Pa. July 3, 2018).[7] The information provided by the ALJ to Plaintiff was, at best, misleading: a competent representative would have understood that a new claim for Disability Insurance Benefits relating to a period prior to August 31, 2022, would be foreclosed.

---

[7] The Commissioner implicitly concedes this point when he argues that Plaintiff's complaint of prejudice in this regard "overlooks the fact that Plaintiff could apply for SSI if her date last insured for DIB had expired." *Defendant's Brief*, ECF No. 17, p. 12 n.6.

Under these circumstances, the Court concludes that Plaintiff has established that remand of the matter is warranted.[8]

## V.   CONCLUSION

**WHEREUPON,** the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 30, 2026                                *s/Norah McCann King*
                                                                  NORAH McCANN KING
                                                       UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for failure to secure a knowing and intelligent waiver of counsel that prejudiced Plaintiff, the Court does not consider those claims.